**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**3:20-cr-201-RJC-DCK-1**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | |
| ) | **ORDER** |
| **MARQUAY QUAMAINE SHEPPARD,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**THIS MATTER** is before the Court on Defendant's pro se Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [Doc. 57].

**I.   BACKGROUND**

Defendant was charged with: four counts of distribution and possession with intent to distribute a detectable amount of cocaine base in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) (Counts One through Four); possession with intent to distribute 28 grams or more of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) (Count Five); possession of a firearm in furtherance of a drug trafficking crime, e.g. Count Five, in violation of 18 U.S.C. § 924(c) (Count Six); and felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (Count Seven). [Doc. 3]. The Indictment also charged, pursuant to 21 U.S.C. §§ 841 and 851, that Petitioner committed the offenses in Counts One through Five after having been convicted a serious drug felony, *i.e.*, possession with intent to distribute (PWID) crack cocaine conviction under South Carolina Code § 44-53-375(b)(2). [Id.; see Doc. 13 (Information Pursuant to 21 U.S.C. § 851)]. This increased his mandatory minimum sentence to 10 years' imprisonment, a fine of $8 million, and eight years of supervised release. [Doc. 13].

1

Defendant pleaded guilty to Counts Five and Seven pursuant to a written Plea Agreement in exchange for the Government's dismissal of the remaining charges, and its withdrawal of the § 851 Information for Count Five. [Doc. 22 at ¶¶ 1, 5 (Plea Agreement)]. He admitted that he is, in fact, guilty as charged in Counts Five and Seven. [Id. at ¶ 1]. The Plea Agreement states that the statutory minimum and maximum sentences are: a mandatory minimum of five years' imprisonment and a maximum term of 40 years' imprisonment, a $5 million fine, or both, and at least four years of supervised release for Count Five;[1] and a maximum term of 10 years' imprisonment, a $250,000 fine, and no more than three years of supervised release for Count Seven. [Id. at ¶ 5].

The parties agreed to jointly recommend that: the amount of drugs that was known to or reasonably foreseeable by the Defendant (including relevant conduct) was approximately 115 grams of cocaine base and 34 unit doses of oxycodone; the plea is timely for purposes of acceptance of responsibility, if applicable; enhancements pursuant to U.S. Sentencing Guidelines §§ 2D1.1(b)(1) 2D1.1(b)(12), 2K2.1(a)(4), and 2K2.1(b)(6) apply; the career offender or armed career criminal may be used in determining the sentence if the Court determines that those enhancements apply; and neither party will seek a departure or variance from the guideline range. [Id. at ¶ 8]. The parties remained free to argue their respective positions regarding any other specific offense characteristics, cross-references, special instructions, reductions, enhancements, departures, and adjustments to the offense level. [Id.].

The Plea Agreement further provides that: the Court would consider the advisory U.S. Sentencing Guidelines; the Court had not yet determined the sentence; any estimate of the likely

---

[1] The Plea Agreement notes the sentencing exposure that the Defendant would face pursuant to § 851. [Doc. 22 at ¶ 5].

2

sentence is a prediction rather than a promise; the Court would have the final discretion to impose any sentence up to the statutory maximum for each count; the Court would not be bound by the parties' recommendations or agreements; and Defendant would not be permitted to withdraw his plea as a result of the sentence imposed. [Id. at ¶ 7].

The Plea Agreement provides that there is a factual basis for the guilty plea, and that Defendant read and understood the written Factual Basis that was filed with the Plea Agreement, which may be used by the Court, U.S. Probation Office, and United States without objection for any purpose, including to determine the applicable advisory guideline range or the appropriate sentence. [Id. at ¶ 11]. The Plea Agreement further provides that the Factual Basis does not necessarily represent all of the conduct relevant to sentencing, and that the Government may submit a Statement of Relevant Conduct to the Probation Office and present the Court with additional relevant facts for purposes of sentencing. [Id. at ¶ 12].

The Plea Agreement sets forth the rights Defendant was waiving by pleading guilty, including the right: to withdraw the guilty plea once the Magistrate Judge has accepted it; to be tried by a jury; to be assisted by an attorney at trial; to confront and cross-examine witnesses; and not be compelled to incriminate himself. [Id. at ¶¶ 13-15]. The Plea Agreement acknowledges that Defendant had discussed with defense counsel his post-conviction and appellate rights, and he expressly waived those rights except for claims of ineffective assistance of counsel or prosecutorial misconduct. [Id. at ¶¶ 16-17]. The waiver expressly "precludes the defendant from challenging his conviction or sentence on the basis of any other claim, including but not limited to any claim that the statute(s) to which the defendant is pleading guilty is or are unconstitutional and any claim that the admitted conduct does not fall within the scope of the statute(s). [Id. at ¶ 17]. The Plea Agreement provides that "[t]here are no agreements, representations, or understandings between

3

the parties in this case, other than those explicitly set forth in this Plea Agreement, or as noticed to the Court during the plea colloquy and contained in writing in a separate document signed by all parties." [Id. at ¶ 28].

The Factual Basis that was filed along with the Plea Agreement provides in relevant part:

> From 2018-2020, law enforcement investigated the Defendant, Marquay Quamaine Sheppard for drug trafficking and firearm offenses. Defendant participated in numerous drug trafficking infractions, leading up to his January 03, 2020 arrest. On or about January 03, 2020, law enforcement executed a search warrant at the Defendant's residence…. Officers arrested the defendant and recovered approximately 55 grams cocaine base (crack cocaine), 1.4 grams marijuana, two (2) handguns, drug packaging contraband and approximately $8,719 (USD) in drug trafficking proceeds. Ultimately, the defendant is responsible for trafficking at least 115 grams cocaine base (crack cocaine) and 34 unit doses of Oxycodone, which were seized on additional dates.
>
> The defendant … on or about January 03, 2020, in Gaston County … and elsewhere, did knowingly and intentionally possess with intent to distribute a controlled substance, that is, a mixture and substance containing twenty-eight grams or more of cocaine base ("crack cocaine"), a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and 841(b)(1)(B).
>
> The defendant … on or about January 03, 2020, in Gaston County … and elsewhere, knowing that he had been previously convicted of at least one crime punishable by imprisonment for a term exceeding one year, did knowingly and unlawfully possess one or more firearms, in and affecting interstate commerce, that is, a … 9mm caliber pistol, and a … .38 Special/.357 Mag. Revolver, all in violation of Title 18, United States Code, section 922(g)(1).
>
> The aforementioned narcotics, firearm and ammunition, were discovered by law enforcement on the defendant's person, and within his residence, in proximity and furtherance of each other, on January 03, 2020.
>
> At the time of the incident, the defendant … was previously convicted of one or more crimes punishable by imprisonment for a term exceeding one year.
>
> The defendant knew that he had been previously convicted of a crime punishable by more than one year.

[Doc. 23 at 1-2] (paragraph numbers omitted).

4

On October 28, 2020, a Rule 11 hearing came before a United States magistrate judge. See [Doc. 53 (Plea Hearing Transcript)]. Defendant stated under oath that he received a copy of the Indictment, discussed it with counsel, and understood the charges to which he was pleading guilty as well as the maximum penalties that could apply to him. [Id. at 2-7]. Defendant agreed that: he understood that pleading guilty may cause him to be deprived of certain civil rights; he discussed with counsel how the sentencing guidelines may apply to his case; the Court would not be able to determine the sentence until a PSR has been prepared and Defendant has had an opportunity to comment on it; he may receive a sentence that is different from that called for by the guidelines; and he would have no right to withdraw the plea even if he receives a sentence more severe than he expects. [Id. at 7-12]. Defendant acknowledged the rights he was waiving by pleading guilty. [Id.].

The Plea Agreement was summarized in open court. [Id. at 10-15]. Defendant confirmed that he understood and agreed with the terms of the Plea Agreement, including the waiver of his appellate and post-conviction rights. [Id.]. Defendant stated that he read the Factual Basis, understood it, and agreed with it. [Id. at 15-16]. Defendant stated that nobody threatened, intimidated, or forced him to plead guilty, and that nobody made any promises of leniency or a light sentence to induce him to plead guilty. [Id. at 16]. Defendant had enough time to discuss any possible defenses with his lawyer and was satisfied with counsel's services, stating "I'm just glad to have him." [Id. at 16-17].

The Presentence Investigation Report (PSR) determine the guideline range based on Count Five pursuant to § 3D1.3. [See Doc. 34 (PSR) at ¶ 57]. The base offense level was 26 because the offense is a violation of § 841(a)(1) and the total converted drug weight was 411.80 kilograms. [Id. at ¶ 43]. Two-level enhancements were added because a firearm was possessed pursuant to §

2D1.1(b)(1), and because the Defendant maintained a premises for the purpose of distributing a controlled substance pursuant to § 2D1.1(b)(12). [Id. at ¶¶ 44, 45]. This resulted in an offense level of 30, however, the Defendant qualifies as a career offender because he was at least 18 years old at the time of the offense of conviction; the offense is a felony crime of violence or controlled substance offense; and Defendant had at least two prior felony convictions for a crime of violence or controlled substance offense (PWID marijuana in Case Nos. 2008GS4600529 and 2008GS4603473; PWID marijuana within proximity of a school in Case No. 2008GS4603472; PWID crack cocaine within proximity of a school or park in Case No. 2013GS4602124; and PWID crack cocaine in Case No. 2012GS4602175). [Id. at ¶ 58]. Therefore the offense level was 37. [Id.]. Three levels were deducted for acceptance of responsibility, resulting in a total offense level of 34. [Id. at ¶¶ 59-61]. Petitioner had 11 criminal history points and a criminal history category of V, however, the criminal history category for career offenders is VI. [Id. at ¶¶ 72-73]. The advisory guideline range was therefore 262 to 327 months' imprisonment. [Id. at ¶ 97]. The PSR addresses the impact of the Plea Agreement as follows:

> Pursuant to the Plea Agreement, if the defendant complies with each and every provision of the Plea Agreement, the United States will withdraw the notice pursuant to 21 U.S.C. § 851 at the time of sentencing; thus, the defendant will face a sentence of no less than 5 years nor more than 40 years imprisonment, and a term of at least 4 years of supervised release for Count Five.
>
> Additionally, it appears the defendant qualifies as a Career Offender. Thus, with the filing of the 851 Notice, his total offense level becomes 34 with a criminal history category of VI, producing a guideline custody range of 262 to 327 months and a fine range of $35,000 to $8,000,000. If the 851 Notice is withdrawn at sentencing, his total offense level becomes 31 with a criminal history category of VI producing a guideline custody range of 188 to 235 months with a fine range of $30,000 to $4,000,000.

[Id. at ¶¶ 98-99] (paragraph numbers omitted). Defense counsel filed PSR objections addressing the scoring of several of Defendant's prior convictions. [Doc. 30].

At the sentencing hearing, the Defendant stated that he had a chance to read the PSR, understood it, and he had enough time to review it with counsel. [Doc. 48 at 2-3]. The United States withdrew the § 851 Information pursuant to the Plea Agreement, which reduced the advisory guidelines range to between 188 and 210 months' imprisonment. [Id. at 3]. Defense counsel withdrew Defendant's PSR objections because the Government had agreed not to object to the defense's presentation of a Motion for Variance. [Id.]. The defense requested a 120-month sentence based on factors including the Defendant's history and characteristics. [See id. at 12-14]. The Defendant apologized for his actions and expressed remorse. [Id. at 17-19]. The United States requested a sentence at the bottom of the guideline range of 188 months' imprisonment. [Id. at 22]. The Court denied the Motion for Variance and sentenced the Defendant to 188 months' imprisonment for Count Five and 120 months for Count Seven, concurrent, followed by four years of supervised release. [Id. at 24-26; Doc. 42 (Judgment)].

On direct appeal, the Defendant challenged the Court's denial of a downward variance. The Fourth Circuit dismissed the appeal because the Defendant's claim fell squarely within the scope of his knowing and voluntary appellate waiver. United States v. Sheppard, 2022 WL 19079583 (4th Cir. Nov. 22, 2022). The United States Supreme Court denied certiorari on March 20, 2023. Sheppard v. United States, 143 S.Ct. 1026 (2023).

Defendant filed the instant Motion to Vacate on March 5, 2024.[2] [Doc. 57]. He argues that: (1) the conviction and sentence in Count Seven should be vacated or he should be allowed to withdraw his guilty plea pursuant to New York State Rifle & Pistol Ass'n, Inc. v. Bruen, 597 U.S. 1 (2022) because is actually innocent violating § 922(g)(1); (2) counsel erroneously advised him

---

[2] Houston v. Lack, 487 U.S. 266, 276 (1988) (establishing the prisoner mailbox rule); Rule 3(d), 28 U.S.C. foll. § 2255 (addressing inmate filings).

7

to accept the Plea Agreement so that the § 851 Information would be withdrawn even though Defendant is actually innocent of that sentencing enhancement, and this "impacted him receiving a more favorable plea deal…"; and (3) counsel was ineffective for waiving an objection to the erroneous career offender enhancement because his South Carolina convictions for PWID drugs are not predicate "controlled substance offenses." [Id.]. He seeks an evidentiary hearing and a resolution of his claims on the merits. [Id. at 19]. The Court ordered the United States to respond. [Doc. 59]. The United States argues that the Bruen claim is waived, procedurally defaulted, and without merit, and that the Defendant cannot show deficient performance or prejudice with respect to his claims of ineffective assistance of counsel. [Doc. 61]. The Defendant filed a Reply. [Doc. 62]. This matter is ripe for disposition.

## II. SECTION 2255 STANDARD OF REVIEW

A federal prisoner claiming that his "sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the Defendant is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Defendant can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

### III. DISCUSSION[3]

#### A. Bruen Claim

"[A] guilty plea constitutes a waiver of all nonjurisdictional defects, including the right to contest the factual merits of the charges." United States v. Willis, 992 F.2d 489, 490 (4th Cir. 1993). Thus, after a guilty plea, a defendant may not "raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Blackledge v. Perry, 417 U.S. 21, 29-30 (1974). Rather, he is limited "to attacks on the voluntary and intelligent nature of the guilty plea, through proof that the advice received from counsel was not within the range of competence demanded of attorneys in criminal cases." Id. Further, unambiguous appellate waivers that a defendant enters into knowingly and voluntarily are generally valid and enforceable. See United States v. Moran, 70 F.4th 797 (4th Cir. 2023). There is a "narrow class of claims" that the Fourth Circuit has allowed a defendant to raise on direct appeal despite a general waiver of appellate rights. United States v. Lemaster, 403 F.3d 216, 220 n.2 (4th Cir. 2005). Examples include challenges to sentences based on a constitutionally impermissible factor, see United States v. Marin, 961 F.2d 493, 496 (4th Cir. 1992); sentences imposed beyond the authority of the district court, see United States v. Broughton-Jones, 71 F.3d 1143, 1147-49 (4th Cir. 1995); and cases in which enforcing the waiver would result in a miscarriage of justice, see United States v. Adams, 814 F.3d 178, 182 (4th Cir. 2016). Moran, 70 F.4th at 802 n.3. To establish a miscarriage of justice in enforcing an appellate waiver, a defendant need only make a cognizable claim of actual innocence. United States v. McKinney, 60 F.4th 188, 192 (4th Cir. 2023) (declining to enforce an appeal waiver where Defendant showed that the sole

---

[3] The Defendant's claims have been restated and renumbered. Any argument or subclaim that is not separately discussed in this section has been considered and rejected.

offense underling his § 924(c) conviction was subsequently held to not constitute a predicate "crime of violence").

In the instant case, the Fourth Circuit found that the Defendant's guilty plea was knowing and voluntary and that his plea agreement's waiver is enforceable. Sheppard, 2022 WL at 19079583. The Defendant's present challenge to § 922(g)(1) is, therefore, waived. He attempts to avoid this waiver by arguing that he is actually innocent of violating § 922(g)(1) and that enforcing the plea waiver would result in a miscarriage of justice. [Doc. 62 at 4]. However, he has not come forward with any evidence that he is factually innocent of violating § 922(g). His reliance on Bruen, United States v. Rahimi, 61 F.4th 443 (5th Cir. 2023), Range v. United States, 69 F.4th 96 (3d Cir. 2023) (en banc), and United States v. Duarte, 101 F.4th 657 (9th Cir. 2024), to demonstrate actual innocence is unavailing.

In Bruen, the Supreme Court held that the government must justify firearms prohibitions by showing that they are consistent with the nation's historical tradition of firearm regulations. 597 U.S. 1. Bruen did not declare § 922(g)(1) to be facially unconstitutional, nor did it abrogate binding Fourth Circuit precedent upholding the constitutionality of § 922(g)(1). See United States v. Canada, 103 F.4th 257, at *1 (4th Cir. 2024); see, e.g., United States v. Moore, 666 F.3d 313 (4th Cir. 2012); United States v. Pruess, 703 F.3d 242 (4th Cir. 2012). Rahimi is a Fifth Circuit case finding that § 922(g)(8) violates the Second Amendment. The instant case involves § 922(g)(1) rather than (g)(8) and, in any event, the Supreme Court recently overruled the Fifth Circuit and found § 922(g)(8) to be facially constitutional. United States v. Rahimi, 2024 WL 3074728 (June 21, 2024). Duarte and Range are as-applied challenges to § 922(g)(1) that were

10

issued by the Ninth and Third Circuits, respectively; they are limited to their facts,[4] and are not binding in this Circuit. The Defendant has failed to make a cognizable claim of actual innocence and, accordingly, his present Bruen challenge to Count Seven has been waived

The Defendant's Bruen claim is also procedurally defaulted from § 2255 review. "Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal." Bousley v. United States, 523 U.S. 614, 621 (1998) (internal citations omitted); United States v. Sanders, 247 F.3d 139, 144 (4th Cir. 2001). In order to collaterally attack a conviction or sentence based upon errors that could have been but were not pursued on direct appeal, a Defendant must show cause and actual prejudice resulting from the errors of which he complains or he must demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack. See United States v. Frady, 456 U.S. 152, 167-68 (1982); United States v. Mikalajunas, 186 F.3d 490, 492–93 (4th Cir. 1999); United States v. Maybeck, 23 F.3d 888, 891-92 (4th Cir. 1994). Actual prejudice is shown by demonstrating that the error worked to Defendant's "actual and substantial disadvantage," rather than just creating a possibility of prejudice. See Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997) (quoting Murray v. Carrier, 477 U.S. 478, 494 (1986)). Actual innocence means factual innocence; "this standard is not satisfied by a showing that a Defendant is legally, but not factually, innocent." Mikalajunas,186 F.3d at 490.

---

[4] Duarte was previously convicted of vandalism, felon in possession of a firearm, possession of a controlled substance, and two convictions for evading a peace officer; and Range was previously convicted of making a false statement to obtain food stamps. The Defendant's case is factually distinguishable because he had multiple prior felony convictions for drug trafficking offenses, several of which occurred in proximity to a school or park. See, e.g., United States v. Jackson, 69 F.4th 495, 501 (8th Cir. 2023) (holding that "[§] 922(g)(1) is not unconstitutional as applied to" a non-violent drug offender "based on his particular felony convictions [for drug trafficking]"); United States v. Smith, No. 23-008, 2023 WL 6795807, at *4 (W.D. Pa. Oct. 13, 2023) ("[Section] 922(g)(1)'s ban on firearm possession by persons ... who have been convicted of drug trafficking is consistent with our country's historic tradition of regulating firearms."); Porter v. United States, No. 22-6199, 2023 WL 6366273, at *7 (D.N.J. Sept. 28, 2023) (holding that § 922(g)(1) is constitutional as applied to petitioner and "Petitioner's prior convictions for drug possession and distribution ... show that he poses a danger to society").

The Defendant did not raise his Bruen claim on direct appeal.[5] Construing the Motion to Vacate liberally, the Defendant appears to argue that his procedural default of this claim is excused by actual innocence and/or appellate counsel's ineffective assistance for failing to raise the issue on direct appeal. [See Doc. 62 at 4-5]. The Defendant's actual innocence argument fails for the reasons discussed *supra*. Because Bruen did not find § 922(g)(1) to be unconstitutional or overrule binding Fourth Circuit precedent, counsel was not deficient for failing to raise Bruen on direct appeal. Nor is there any reasonable probability that such a claim would have succeeded if it was raised by counsel. Accordingly, the Defendant has failed to establish cause and prejudice or actual innocence to excuse his procedural default of the Bruen challenge and it is procedurally defaulted from § 2255 review.

Even if the Bruen claim were not waived and procedurally defaulted from § 2255 review, it would be denied on the merits because the Defendant has failed to demonstrate that § 922(g)(1) is unconstitutional either facially or as applied to him. See *supra*; [see also Doc. 61 at 12-14].

Accordingly, the Defendant's challenge to his § 922(g)(1) conviction and sentence pursuant to Bruen is dismissed and denied.

**B. Ineffective Assistance Claims**

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. Const. Amend. VI. To show ineffective assistance of counsel, a defendant must first establish deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). The deficiency prong turns on whether "counsel's

---

[5] Bruen was issued on June 23, 2022, while the Defendant's direct appeal was pending.

representation fell below an objective standard of reasonableness ... under prevailing professional norms." Id. at 688. A reviewing court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 689). The Strickland standard is difficult to satisfy in that the "Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." See Yarborough v. Gentry, 540 U.S. 1, 8 (2003). The prejudice prong inquires into whether counsel's deficiency affected the judgment. See Strickland, 466 U.S. at 691. A defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. In considering the prejudice prong of the analysis, a court cannot grant relief solely because the outcome would have been different absent counsel's deficient performance, but rather, it "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, a defendant "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the defendant fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), *vacated on other grounds*, 218 F.3d 310 (4th Cir. 2000).

The Sixth Amendment right to the assistance of counsel during criminal proceedings extends to the plea-bargaining process. See Missouri v. Frye, 566 U.S. 134 (2012). Thus, criminal defendants are "entitled to the effective assistance of competent counsel" during that process. Lafler v. Cooper, 566 U.S. 156, 162 (2012) (internal quotation marks omitted); Merzbacher v.

13

Shearin, 706 F.3d 356, 363 (4th Cir. 2013). Where a defendant enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was "within the range of competence demanded by attorneys in criminal cases." Hill v. Lockhart, 474 U.S. 52, 56 (1985) (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)). To satisfy Strickland's prejudice prong, the defendant must show "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59. To meet this requirement, a defendant must establish "both subjectively that he would have gone to trial and that it would have been objectively reasonable to do so." United States v. Santiago, 632 F. App'x 769, 773 (4th Cir. 2015) (emphasis in original) (citing United States v. Fugit, 703 F.3d 248, 260 (4th Cir. 2012)).

When an ineffective assistance claim relates to a sentencing issue, a petitioner must demonstrate a "reasonable probability that his sentence would have been more lenient" but for counsel's error. Royal v. Taylor, 188 F.3d 239, 249 (4th Cir. 1999) (internal quotation omitted). When applying the Strickland prejudice test in the context of sentencing, "any amount of actual jail time has Sixth Amendment significance." Glover v. United States, 531 U.S. 198, 203 (4th Cir. 2001).

First, counsel did not provide ineffective assistance with regards to the § 851 Information. Section 841(b)(1)(B) increases the applicable mandatory minimum sentence when a defendant commits certain drug crimes "after a prior conviction for a serious drug felony ... has become final." 21 U.S.C. § 841(b)(1)(B). A "serious drug felony" is (1) "an offense described in section 924(e)(2) of Title 18" for which the defendant (2) "served a term of imprisonment of more than 12 months" and (3) was released "within 15 years of the commencement of the instant offense." 21 U.S.C. § 802(57). Section 924(e)(2) includes "an offense under State law, involving

14

manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance ..., for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. § 924(e)(2)(A)(ii).

The Defendant was convicted in Case No. 2012GS4602175 under S.C. Code § 44-53-375(b)(2). [See Doc. 34 at ¶¶ 15, 69]. This offense is a violation of state law that involves manufacturing, distributing, or possessing with intent to distribute a controlled substance; the maximum term of imprisonment is 10 years or more; and the Defendant was released from imprisonment within 15 years of the instant offense. See 18 U.S.C. § 924(e)(2)(A)(ii). The Defendant contends that South Carolina's definitions of "cocaine base" and of "narcotic drug" are broader than the federal definitions of those terms. [See Doc. 57 at 6-10]. However, the Defendant has not cited any binding case law that finds a mismatch between the South Carolina and federal drug definitions such that the Defendant's PWID crack cocaine conviction is not a valid predicate. See, e.g., DePierre v. United States, 564 U.S. 70 (2011) (the term "cocaine base" under federal law encompasses cocaine as well as any cocaine in its base form); Mathis v. United States, 579 U.S. 500 (2016) (holding generally that a prior conviction does not qualify as a predicate offense if its elements are broader than the generic offense); Shular v. United States, 589 U.S. 154 (2020) (the categorical approach determines whether a state conviction qualifies as a predicate violent felony or a serious drug offense). To the contrary, courts have found that South Carolina PWID crack cocaine under § 44-53-375(b) is a "serious drug offense" and a "controlled substance offense" for purposes of the career offender guidelines and ACCA. See United States v. Davis, 75 F.4th 428, 443–44 (4th Cir. 2023); United States v. Furlow, 928 F.3d 311, 322 (4th Cir. 2019), *vacated on other grounds*, Furlow v. United States, 140 S. Ct. 2824 (2020); United States v. Buckman, 810 F. App'x 184, 187 (4th Cir. 2020). Reasonable counsel could have concluded that

15

the Defendant's conviction for South Carolina PWID crack cocaine under § 44-53-375(b) likewise qualifies as a "serious drug felony," and that challenging the conviction would have been fruitless. Id.

The Defendant has also failed to demonstrate prejudice. His contention that he would not have accepted the Plea Agreement but for counsel's allegedly ineffective assistance fails because it would not have been objectively reasonable for the Defendant to proceed to trial under the circumstances in this case. The Plea Agreement was highly beneficial to the Defendant in that: the Government agreed to dismiss five serious charges, one of which was a § 924(c) violation carrying a mandatory consecutive sentence; the plea resulted in a three-level reduction for acceptance of responsibility; and there was extremely strong evidence of the Defendant's guilt as set forth in the Factual Basis and PSR. See United States v. Santiago, 632 F. App'x 769, 774 (4th Cir. 2015) ("when the Government's case is strong," a § 2255 petitioner "faces a nearly insurmountable obstacle to showing that it would have been rational to go to trial."); see, e.g., United States v. Fugit, 703 F.3d 248, 259 (4th Cir. 2012) (finding that the decision to go to trial would not have been objectively reasonable where the evidence of petitioner's guilt was overwhelming). Further, the Defendant's contention that counsel's advice "impacted him receiving a more favorable plea deal" is vague, conclusory, and speculative. [Doc. 57 at 6, 8]; United States v. Dyess, 730 F.3d 354, 359 (4th Cir. 2013) ("vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court"). His speculation that a more favorable plea offer was forthcoming from the Government and would have been accepted by the Court, had counsel challenged the § 851 Information, is insufficient. See, e.g., Berkley v. United States, No. 1:18-cr-72-MR, 2021 WL 1238578, at *6 (W.D.N.C. Apr. 2, 2021) (dismissing as speculative the petitioner's claim that effective counsel would have negotiated a more favorable

16

plea offer).

Second, the Defendant contends that counsel was ineffective with regards to sentencing for failing to argue that his South Carolina PWID crack cocaine conviction does not qualify as a career offender predicate. As discussed *supra*, a conviction for South Carolina PWID cocaine base is a qualifying predicate for purposes of career offender sentencing. See Furlow, 928 F.3d at 322 (recognizing that a South Carolina felony conviction for distribution of crack cocaine "is a career offender predicate" under the Guidelines); Davis, 75 F.4th 428 (convictions for distribution of cocaine base is a controlled substance offense for the career offender guideline). Counsel was not deficient for failing to raise this frivolous objection, and there is no reasonable probability that the Defendant would have received a lower sentence had counsel done so.[6]

For the foregoing reasons, the Defendant's claims of ineffective assistance of counsel are dismissed and denied.

### IV. CONCLUSION

For the foregoing reasons, the § 2255 Motion to Vacate is dismissed and denied.

**IT IS, THEREFORE, ORDERED** that:

1. The Defendant's § 2255 Motion to Vacate [Doc. 57] is **DISMISSED AND DENIED.**

2. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338

---

[6] Two prior convictions for a controlled substance offense or a crime of violence are required for the career offender enhancement to apply. See U.S.S.G. § 4B1.1(a). The PSR identified four other convictions in support of the career offender enhancement that the Defendant does not challenge. [See Doc. 34 at ¶ 58]. Therefore, even without the PWID crack cocaine conviction that the Defendant presently disputes, he would still qualify for the career offender enhancement.

17

(2003) (in order to satisfy § 2253(c), a Defendant must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a Defendant must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

Signed: July 31, 2024

Robert J. Conrad, Jr.
United States District Judge